**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Theron Johnny MAXTON,**
**Defendant–Appellant.**
**(Two Cases)**

Nos. 89–5701, 90–5775.

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1991.

Decided July 31, 1991.

Paul Victor Jorgenson, Middletown, Md., John Frank Hardaway, Columbia, S.C., argued, for defendant-appellant.

David Jarlath Slattery, Asst. U.S. Atty., argued (E. Bart Daniel, U.S. Atty., on brief), Columbia, S.C., for plaintiff-appellee.

Before RUSSELL, Circuit Judge, CHAPMAN, Senior Circuit Judge, and DUPREE, Senior District Judge for the Eastern District of North Carolina, sitting by designation.

## OPINION

DONALD RUSSELL, Circuit Judge:

On August 8, 1989, Defendant Theron Johnny Maxton, an inmate in the South Carolina state correctional system, was convicted in the United States District Court for the District of South Carolina of violating 18 U.S.C. § 876 by sending a letter to federal Magistrate Charles Gambrell threatening to kill him. After this trial, during which Gambrell testified, Maxton wrote another letter to the magistrate, again threatening his life. For sending this letter, on December 18, 1989, Maxton was convicted in district court of again violating 18 U.S.C. § 876, as well as violating 18 U.S.C. § 1513. At sentencing on the latter convictions, the Court departed upwardly from the suggested guideline range because of Defendant's "extreme recidivism" and his "egregious serious criminal record." Defendant now appeals both of his 18 U.S.C. § 876 convictions, claiming that the statute is unconstitutionally overbroad in violation of the First Amendment. Finding no constitutional violation, we affirm Maxton's convictions. Defendant also appeals the district court's *sua sponte* upward departure on several grounds. Finding that the lower court did not give Defendant proper notice before such departure, we vacate Maxton's 6350 35 1 latter sentence and remand the case for resentencing.

### I.

Defendant Maxton appears to be a career criminal with a very unsavory past. Shortly after his eighteenth birthday, Maxton was arrested several times, for disorderly conduct, assault and battery, trespassing, and attempted armed robbery and larceny. On this last charge, he was convicted and sentenced to three years imprisonment in a South Carolina penal institution, from which he was released on May 1, 1975. On the day of his release, Maxton held up a cab driver, whom he beat with his fist, threatened with an open knife to the throat, and forced to declothe. Maxton then committed buggery upon his victim, took from him his money, clothing, jewelry, and cab, and left him at the Spartanburg County Landfill clothed only in his hat and shoes. For these heinous acts, Maxton was convicted of armed robbery and buggery, and sentenced to ten years imprisonment. Following his release from prison this time, Maxton, within a forty-five day period, was arrested another four times, for petty larceny, drunk and disorderly conduct, assault and battery, and aggravated assault and battery. This last arrest was for stabbing a female with a butcher knife, and for this Defendant received another ten-year sentence—the sentence he is currently serving.

While in prison for this last offense, Maxton supposedly had several scuffles with prison officials. Because of these, he wrote to federal Magistrate Gambrell and South Carolina Governor Carroll Campbell to complain of his treatment. When this garnered no response, Maxton wrote two threatening letters to Governor Campbell. One stated in part, "I'll be the one to get you, no matter how long it takes me. If I don't get you, I will get Iris or Christie or whoever close to you." The other letter reminded the Governor, "I'll personally kill you when I get out of prison." Because of these letters, Maxton was charged with and convicted, in state court, of threatening the life of a public official, for which he received an additional seven years in prison.

This appeal concerns two letters Maxton has subsequently written Magistrate Gambrell. Gambrell is well acquainted with Defendant, for Maxton, while incarcerated, has filed at least ten or twelve habeas corpus petitions or civil rights cases in the United States District Court for the District of South Carolina; also, in connection with these cases, Maxton has written Gambrell twenty to twenty-five letters over a fifteen-year period.

On February 4, 1989, Defendant mailed Gambrell a letter which read:

I was beat seriously 2–10–89 while I was handcuff behind my back by those correctional officers. I had wrote you a few letter trying to get help to have something done about this with Warden

Kenneth McKellar. And I even got 7 more years 12–2–88 about Gov. Campbell cause I threating him for not doing anything. And all the stitches I got under my eye and knots in my head, going to cost you and that bastard because I don't give a dam if I go to the chair. I will kill you and Carroll Campbell no good ass if I live to get out of here. Your son was lucky being shot, but you and Gov. Campbell won't be. You bastards will wish you had listen to me, that I'll promise, both you sons-of-bitches. I'll get both of you somehow one day and I is to.

For writing this letter Maxton was charged in a federal indictment with one count of violating 18 U.S.C. § 876 (sending a threatening letter through the mail). A jury convicted Defendant of this charge, and the district court sentenced him to sixty months imprisonment, consecutive to the seventeen years he was then serving. Magistrate Gambrell testified at the trial, and later that same day Defendant wrote the official another letter:

> You got your sorry ass on the stand today and Lied. And I dont give a dam what you said, I still have every intentions on killing you one day and thats a promise. You can call all the SCDC officials you wonna or run to the marshall or FBI all you wonna. and nothing going to stop me from killing you but my death or your.

Because of this letter, a two-count federal indictment was handed down charging Maxton with again violating 18 U.S.C. § 876 as well as 18 U.S.C. § 1513 (retaliating against a witness). Maxton was tried and convicted of these offenses, and at sentencing the Court *sua sponte* upwardly departed from the Sentencing Guidelines (which suggested a sentence from 100 to 125 months) by sentencing Maxton to the statutory maximum of 180 months. The Court used Defendant's extreme recidivism and his past criminal record to justify such departure.

Defendant now appeals his convictions for violating 18 U.S.C. § 876, contending that the statute is unconstitutionally overbroad. Maxton also appeals the upward departure, arguing that the facts did not justify such departure, the sentencing court failed to identify its reasons for the degree of the departure, and the Court erred by making such departure without notice to Defendant, thus affording him no opportunity to respond.

## II.

During the trials below, Defendant did not contest the constitutionality of 18 U.S.C. § 876, and as Chief Judge John J. Parker noted in 1939, "The rule is well settled that only in exceptional cases will questions, of whatever nature, not raised and properly preserved for review in the trial court, be noticed on appeal." *Hutchinson v. Fidelity Inv. Ass'n*, 106 F.2d 431, 436 (4th Cir.1939). *See also United States v. Chesapeake & Ohio Ry. Co.*, 215 F.2d 213, 216 (4th Cir.1954); *United States v. One 1971 Mercedes Benz 2–Door Coupe*, 542 F.2d 912, 915 (4th Cir.1976); and *United States v. Mebane*, 839 F.2d 230, 232 (4th Cir.1988). Fed.R.Crim.P. 52(b) provides that, "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Maxton now contends that it was plain error for the lower court not to *sua sponte* declare Section 876 to be overbroad, but, finding no exceptional circumstances present, we disagree. In any event, Defendant's contention of overbreadth here is without merit.

18 U.S.C. § 876 makes illegal the sending of threatening or extortionate communications through the mail. The paragraph under which Maxton was convicted reads:

> Whoever knowingly so deposits [in any post office] or causes to be delivered [by the Postal Service], any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

Threats to kidnap or injure persons are legislatively proscribable, falling within

that group of expressions, such as fighting words, which are not constitutionally protected "pure speech." *See, Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942); *United States v. Lincoln,* 589 F.2d 379, 382 (8th Cir.1979) (conviction under 18 U.S.C. § 876 for threatening to kill the judges of the Eighth Circuit does not violate the First Amendment). Maxton, though, contends that Section 876 is necessarily overbroad because the statute does not require proof that the defendant actually intended to threaten the recipient or that the latter actually felt threatened by the communication.

■ While Maxton is correct that Section 876 does not require that the actual recipient of a communication feel threatened, we have interpreted the statute to provide that the communication must nevertheless encompass a "true threat." "If there is substantial evidence that tends to show beyond a reasonable doubt that an ordinary, reasonable recipient who is familiar with the context of the letter would interpret it as a threat of injury, the court should submit the case to the jury." *United States v. Maisonet,* 484 F.2d 1356, 1358 (4th Cir. 1973), *cert. denied,* 415 U.S. 933, 94 S.Ct. 1447, 39 L.Ed.2d 491 (1974). Also, to be convicted under Section 876 a defendant must knowingly deposit a threatening communication in the mail. We find implicit in this element a requirement that the defendant must have a general intent to threaten the recipient at the time of the mailing. As in the present case, most of the time such intent can be gleaned from the very nature of the words used in the communication; extrinsic evidence to prove an intent to threaten should only be necessary when the threatening nature of the communication is ambiguous. *See* Annotation, "Elements of Offense, and Sufficiency of Proof Thereof, in Prosecution for Mailing Threatening Communication Under 18 USCS § 876," 30 A.L.R. FED. 874, 900–01 (1976 & Supp.1990); *United States v. Le Vison,* 418 F.2d 624 (9th Cir.1969); and *United States v. Barcley,* 452 F.2d 930 (8th Cir. 1971). We find no error in the jury instructions below.

The Supreme Court has held that to violate the First Amendment, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917–18, 37 L.Ed.2d 830 (1973). We find that Section 876 as applied makes illegal little, if any, constitutionally protected speech, much less a substantial amount. *Cf. United States v. Hutson,* 843 F.2d 1232, 1234–35 (9th Cir.1988) (extortion provisions of Section 876 are not unconstitutionally overbroad). Maxton's convictions are hereby affirmed.

### III.

■ On appeal, Maxton also contends that the lower court erred when, during his last sentencing, it upwardly departed from the sentencing guidelines. Defendant assigns three reasons why his sentence should be vacated, and we find one of these to be dispositive: in the absence of a motion by the Government to upwardly depart from the sentencing range, the Court *sua sponte* made a departure without any notice to Defendant.

Quite recently, the Supreme Court has ruled that criminal defendants must be given reasonable notice before a sentencing court makes an upward departure:

> We hold that before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure.

*Burns v. United States,* —— U.S. ——, ——, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991).

In the present case, Defendant had no notice that the sentencing court was considering an upward departure—the presentence report did not identify any grounds for departure, nor did the Government request such. We thus vacate Maxton's 180

month sentence, and remand the case for resentencing. Should the district court again wish to upwardly depart from the guideline range, the Court should give Defendant and the Government reasonable notice of this possibility.

Accordingly, the disposition of the case below is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.