# UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                       No. 00-4862

SCOTTIE LEE GRAVES,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-00-123)

Submitted: May 31, 2001

Decided: June 15, 2001

Before WILLIAMS and MICHAEL, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

## COUNSEL

Louis C. Allen, III, Federal Public Defender, Eric D. Placke, Assistant
Federal Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Michael F. Joseph,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Scottie Lee Graves was convicted of four counts of mailing a threatening communication, in violation of 18 U.S.C. § 876 (1994). He now appeals, raising two issues in his formal brief. Graves also moves for leave to file a supplemental pro se brief. While we grant the motion, we find that none of the arguments raised in either Graves' formal brief or his pro se brief has merit, and we therefore affirm.

I

Graves was convicted on North Carolina state drug charges and sentenced on March 26, 1998, to 80-100 months in prison. He was prosecuted by Guilford County Assistant District Attorney Richard Panosh. Starting in July 1998, Graves wrote seventeen letters to Panosh. The letters were mailed primarily to Panosh at his office; however, several letters were mailed to his home. Graves admitted to an FBI agent that he had mailed all seventeen letters.

Graves was charged with five counts of mailing threatening communications, in violation of 18 U.S.C. § 876. A jury convicted Graves on Counts One, Two, Three, and Five. None of the charged letters contained a direct threat against Panosh or his family; indeed, Graves in some cases specifically stated that the letter was not a threat. However, language in each letter easily could have been interpreted as threatening, and Panosh testified that he construed each letter to be a threat against him and/or members of his family.

In the letter charged in Count One, Graves wrote, "I will not rest until I do what I must do. . . . [T]he Bible says an eye for an eye." The letter charged in Count Two told Panosh, "I hold you responsible for each day that I'm spending in prison. . . . I am not responsible for

casualties in societies [sic] future or yours." Graves wrote in the letter charged in Count Three, "I'm around REAL Killers and now begin to THINK LIKE THEM and understand why they HURT people . . . . It's people LIKE YOU who turn people like me into a KILLER." Finally, in the letter covered by Count Five, Graves wrote, "Say your prayers Panosh. . . . Don't worry, NEVER would I dirty my hands with your HELL BOUND BLOOD. . . . I will NEVER hurt you myself but I . . . praise anyone or thing that will hurt you."

Graves was sentenced to sixty months in prison. He now appeals his convictions and, in his informal brief, challenges his convictions and sentence.

II

Prior to trial, the district court ruled that six of the twelve uncharged letters and the envelopes in which they were mailed were admissible under Fed. R. Evid. 404(b) on the issue of intent. The six letters were mailed during the same time period as the charged letters. The text of the six letters was very similar to that of five charged letters; additionally, Graves drew cartoons on some of the letters' envelopes that were menacing. For instance, one drawing was of a dog with teeth bared, attacking Panosh's name. On another envelope, a muscle-bound man was offering a "ride" to Panosh inside a chain that was attached to the bumper of a pickup truck. Clearly, the implication was that Panosh would be dragged behind the truck and his body torn apart. The caption to the drawing drove home this point. It stated, "If I ever get out, and *YOU* need a ride, please call US. . . . [W]e will pick up the pieces. Ha Ha. Hop right in, Dick!"

Given the somewhat ambiguous nature of the charged letters, admission of the six uncharged letters was not an abuse of discretion. *See United States v. Maxton*, 940 F.2d 103, 106 (4th Cir. 1991) (in prosecutions under 18 U.S.C. § 876, extrinsic evidence to prove intent to threaten allowed if threatening nature of communication is ambiguous). We conclude that the six letters were relevant and necessary to the element of intent, reliable, and not unduly prejudicial. *See United States v. Queen*, 132 F.3d 991, 995 (4th Cir. 1997).

### III

Graves contends that the evidence was insufficient to convict him. We uphold a jury's verdict of guilt if there is substantial evidence in the record to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942). Here, looking at the evidence as a whole, including both the charged and uncharged letters, we conclude that there was sufficient evidence to convict Graves on the four counts.

### IV

In his informal brief, Graves complains about alleged irregularities in his state criminal trial; these claims are not cognizable here. He also reiterates the claims raised in the formal brief. Finally, he appears to complain that his federal sentence should have run concurrently with his state sentence. He is mistaken. Graves' federal sentence was required, by statute and under the sentencing guidelines, to run consecutive to his state sentence. *See* 18 U.S.C. § 3584(a) (1994); *U.S. Sentencing Guidelines Manual* § 5G1.3(a) (2000).

### V

We accordingly affirm. We dispense with oral argument because the facts and legal contentions are fully raised in the materials before us and argument would not aid the decisional process.

*AFFIRMED*